## ENOCH COLBY, and another, *versus* CYRUS CRESSY.

|     |     |
| --- | --- |
| 5   | 237 |
| 69  | 201 |

A being indebted to B and C, delivered to them certain personal property, under an agreement that they should sell the same, and apply the proceeds of the sale to the payment of the money due to them from A. But instead of selling, B and C let the property go back into the possession of A, who, for some time, used it at his pleasure ; and while it was in this situation it was attached by the creditors of A as his property—it was held, that the said creditors were entitled to hold the property against the claim of B and C.

TROVER for a mare, saddle, and bridle. The cause was tried here at February term, 1830, and a verdict taken for the defendant, subject to the opinion of the court upon the following case.

In August, 1826, the mare, saddle and bridle, being the

property of George Ogilvie, were, with sundry other articles, attached by his creditors. Soon after this, the plaintiffs, being also creditors of the said Ogilvie, assumed the debts due to the attaching creditors, and thereupon Ogilvie delivered to them the property which had been attached, under a verbal agreement that they should dispose of it, and appropriate the proceeds of it, first to the discharge of the assumed debts, and retain the surplus, if any, in discharge of their own demands.

On the 13th February, 1829, the plaintiffs took a lease from a Mr. Woodbury, of the farm on which Ogilvie had before resided, and which he had sold and conveyed to Woodbury, and Ogilvie has ever since lived on the farm and occupied it, under an agreement with the plaintiffs that he and his family should be supported from the produce of the farm, and that all beyond that should be received by the plaintiffs. The mare has been kept on the farm, and the saddle and bridle in the buildings occupied by Ogilvie, and have been used by him at his pleasure, without rendering any account thereof to the plaintiffs ; and being thus found in his possession were seized as his property, upon an execution against him in favor of Horace Atkins, by the defendant, who is a deputy of the sheriff of this county.

*H. B. Chase,* for the plaintiffs.

*Tappan,* for the defendant.

*By the court.* We see no ground on which this action can be sustained. The plaintiffs were never the owners of the goods. They once had possession, and an authority to sell and apply the proceeds to certain purposes. But it does not appear, that they ever exercised that authority.

The contract between them and Ogilvie, under which the goods were delivered to them, did not amount to a mortgage. 2 Vesey, jun. 378 ; 5 Johns. 258, *Barrow* v. *Paxton* ; 5 Pick. 59, *Ward* v. *Sumner.*

Had the plaintiffs retained the possession, they might

Colby et a.
*v.*
Cressy.

perhaps have held the goods as a pledge. 2 Pick. 607; 2 Caine's Cases, 202. But continued possession is requisite to preserve the lien which is created by pledging.

Where the goods were, between the time when they were delivered to the plaintiff, in 1826, and the 13th February, 1829, does not appear. But they having been in the possession of Ogilvie, from February, 1829, until the time when they were taken by the defendant, and having been used by Ogilvie as his own, the plaintiff's cannot be permitted to claim them under the contract of 1826, which, for aught that appears, had lain entirely dormant from the time it was made until the goods were seized.

Even when goods are seized by virtue of an execution, if they are suffered to remain with the debtor, another creditor may seize and hold them. 11 Johns. 110; 17 ditto, 274; 3 D. & E. 596; 5 Cowen, 392.

We are of opinion that there must be

*Judgment on the verdict.*